[Civ. No. 10805.   Third Dist.   Nov. 18, 1964.]

BLANCHE LANDERMAN, Plaintiff and Appellant, v.
JAMES HAMILTON et al., Defendants and Respondents.

Russell P. Studebaker and Maurice Engel for Plaintiff and Appellant.

Rich, Fuidge, Dawson & Marsh, Fitzwilliam, Memering, Stumbos & DeMers, Richard H. Fuidge and Leo M. Fitzwilliam for Defendants and Respondents.

VAN DYKE, J.†—This is an appeal from a judgment of the Superior Court of Sutter County based on a defense verdict of a jury in an action brought by plaintiff to recover damages for injuries alleged to have been sustained by her as the result of the malpractice and negligence of defendants.

Plaintiff, as a patient of defendant Doctor James Hamilton, entered the Fremont Hospital for corrective surgery involving removal of the cervix and a tissue buildup in a "banjo string" at the opening of the vaginal vault. Preoperative examination by Doctor Hamilton disclosed no abnormalities of her upper and lower extremities. The operation was performed under general anesthesia. Plaintiff regained consciousness and immediately complained of severe pain in her legs and hips. This pain continued during her stay in the hospital from August 10 to August 28, 1960, and thereafter. She was seen by Doctor Hamilton concerning these pains and he directed certain exercises which brought no relief. She consulted another doctor in the area at which time X-rays were taken. The pains were not relieved. Finally, she went to the University of California Hospital about November 15

---

†Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

where she was treated but the pain still persisted. On February 14, 1961, she consulted Doctor Sanderson who performed a laminectomy fusion of the fourth and fifth lumbar vertebrae to correct a protruded degenerated intervertebral disc. This surgery brought relief.

Doctor Sanderson, called by plaintiff, gave it as his opinion that the degenerative process affecting the disc had been going on for a number of years unknown to her; that there was nothing in her history or the preoperative examinations that should have acted as a warning of this disc condition to the surgeon. He further testified that in his opinion the condition of the disc at and before the time of surgery was such that a protrusion of the disc *could* be caused by some simple thing like sneezing or retching or vomiting, or reaching over to pick up a handkerchief, or to tie a shoe, or reaching down to turn on a hydrant to water a lawn: and that the injury *could* have happened during the normal course of the operation without negligence on Doctor Hamilton's part. But he also gave it as his opinion that the disc protrusion occurred in the interval between going into surgery and regaining consciousness with the pain in the back. There was detailed testimony that in all that was done by the hospital, or during surgery by the surgeon, approved practices were followed, and that if we accept as a fact that the disc protrusion did occur during that period, it was not through actionable negligence of the hospital or the surgeon. As Doctor Hamilton testified in his defense, ". . . I did nothing, and I know [of] nothing else being done during her entire stay in the hospital that could have ruptured this disc."

The jury was instructed on the doctrine of res ipsa loquitur, and it is the contention on appeal that from the record, as a matter of law, appellant was entitled to a verdict in her favor. There is some discussion in the briefs as to the applicability of the doctrine. We think that it does apply (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 688-689 [268 P.2d 1041]) and that from the facts presented, and assuming the jury found that it occurred during surgery, the burden was cast upon defendants to produce evidence that rebutted the inference. Appellant argues that the inference was not rebutted. We do not agree.

The situation presented by the record here is one where the burden was cast upon the respondents of showing (1) either "a satisfactory explanation of the accident, that is, an affirmative showing of a definite cause for the accident, in which no element of negligence on the part of the defendant

inheres, or (2) of such care in all possible respects as necessary to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown.'' (*Dierman* v. *Providence Hospital*, 31 Cal.2d 290, 295 [188 P.2d 12]; *Roberts* v. *Trans World Airlines*, 225 Cal.App.2d 344, 352 [37 Cal.Rptr. 291].) ▆ The evidence here meets the requirements of the second classification.

▆ ''The defendant's evidence need only offset or balance the inference of negligence, and he need not prove himself free from negligence by preponderance of proof.'' (*Roberts* v. *Trans World Airlines, supra,* at p. 352, citing *Williams* v. *City of Long Beach*, 42 Cal.2d 716, 718 [268 P.2d 1061], in which the court said: ''The defendant has the burden of going forward with the evidence, that is, the burden of producing evidence sufficient to meet the inference of negligence by offsetting or balancing it, but he is not required to prove himself free from negligence by a preponderance of the evidence.'') As we have said, Doctor Hamilton, the surgeon, described in detail the technique of the operation, the manner of its performance and his compliance with the generally accepted standard of his profession; and Doctor Sanderson, giving expert testimony as a witness called by the plaintiff, and being familiar with the hospital and surgical records, said that, accepting the evidence as to how the operation was performed and how the plaintiff was cared for by the hospital, he could not say that the protrusion of the disc was the result of any negligence on the part of the surgeon or of the hospital employees. As this court said in *Roberts* v. *Trans World Airlines, supra,* at page 352: ''. . . A defendant has alternative methods by which to rebut the inference. First, he may offer a satisfactory explanation of the accident, that is, a definite cause for the accident in which no element of negligence on his part inheres. Alternatively, he may show such care in all possible respects as necessarily to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown.'' Considering the condition, as presented by the record here, of the degenerated lumbar disc in plaintiff's back which could be caused to protrude by any insignificant thing such as sneezing, retching, vomiting, reaching over to pick up a handkerchief, to tie a shoe, to reach down to turn on a hydrant to water the lawn, or by any number of things (as stated by both expert

witnesses) of which respondents were ignorant without fault, all of which the jury was free to find, the situation was one where the jury could have said that the inference of negligence had been offset and, so saying, could justifiably return the verdict which it did. That verdict is supported by the evidence on the issue of liability.

Plaintiff makes the further contention that the court erred in failing to grant her motion for a new trial based upon the alleged concealed bias of a juror on *voir dire*. We are satisfied that the contention cannot be sustained. In support of her motion for a new trial upon this ground, the appellant submitted to the trial court the affidavits of several jurors that juror Donald G. Carlson had stated during the jury deliberations, "I don't understand why I was left on this jury. I really shouldn't be, because I have been in law enforcement work, and as an investigator and I have helped prepare law cases . . . ." On *voir dire* examination the following occurred (the questions being asked by the court) : "Mr. Carlson, have you ever served as a juror before? A. No, sir. . . . Q. You heard the questions of the other jurors pertaining to the difference between criminal and civil cases, have you not? A. Yes, sir. Q. And you are somewhat familiar now with the procedure of the courtroom, are you not? A. Yes, sir. Q. Do you know any of the parties or any of the attorneys, Mr. Carlson? A. Yes, sir, to call them by name is all. Q. You don't know any of them personally? A. No. Q. Is there anything about this case or of the attorneys or the parties involved which will prevent you from being a fair and impartial juror? A. None whatsoever. . . . Q. Is there any reason you know of Mr. Carlson, that you could not and would not be a fair and impartial juror to all parties in this case? A. None."

The juror was then examined by plaintiff's counsel and answered that he was the Assistant Manager of the Metropolitan Life Insurance Company, which company handles health, accident and life insurance; that he had no preconceived notions concerning actions for damages; that in his work he did not deal with the adjustment or settlement of the insurance claims; that none of his immediate family had been connected with the medical profession; that he had once been a police officer and also had been connected with the office of the District Attorney of Sutter County; and that during his work he had in the past had occasion to go to the Fremont Hospital but had not as the result of that any preconceived notions concerning the practice of medicine or the standards

of care pertaining at the hospital or to the hospital personnel. Further, that all the members of his family had in the past been in the Fremont Hospital as patients but there was nothing in the relationship that had created an unpleasant moment in his life or which would influence him in the case. Assuming the propriety of this method of challenging the verdict of a jury, we find nothing in the record to justify a finding of error in the ruling of the trial court. The motion was addressed to the court's discretion. The trial judge in ruling on the motion stated: ''I don't think there were any errors committed by the witness or the respective juror in his voir dire examination, I think he was very truthful. I feel that he answered all of the questions asked by both the Court and by counsel and I believe he was honest. I watched the jury during the trial, they were very attentive. Mr. Carlson happened to be the foreman, and I could see nothing in the affidavits or nothing in his conduct and nothing in his answers to the questions on voir dire examination that would allow this Court to grant a new trial on his answers. So, therefore, the motion —it would be against the Court's conscience to grant a new trial, so, therefore, the motion for new trial will be denied.'' We should and do accept the judgment of the trial court that the juror neither had nor concealed any bias against appellant.

The judgment appealed from is affirmed.

Pierce, P. J., and Friedman, J., concurred.